IN THE UNITED STATES BANKRUPTCY COURT

FOR THE

SOUTHERN DISTRICT OF GEORGIA

BRUNSWICK DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 13 CASE |
| | ) | No. 18-20082 |
| OLETTA THORPE, | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |
| _____ | ) | |
| | ) | |
| TITLEMAX OF GEORGIA, INC., | ) | |
| | ) | |
| Creditor/Movant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| OLETTA THORPE, | ) | |
| | ) | |
| Debtor/Respondent. | ) | |

FILED
at 1 o'clock & 55 min P M
Date 29 March 2019
United States Bankruptcy Court
Brunswick, Georgia

## OPINION AND ORDER GRANTING RELIEF FROM STAY

Pursuant to notice, this matter came on for hearing on a Motion for Relief from Stay (ECF No. 36)[1] (the "Motion") filed by TitleMax of Georgia, Inc. ("TitleMax") regarding a 2004 Cadillac DeVille (the "Vehicle") that is in Debtor's possession. Debtor and TitleMax

---

[1] Unless otherwise noted with "16-20747," all docket citations herein refer to the docket in this case number 18-20082.

1

are parties to a title pawn transaction in which Debtor pledged the Vehicle to TitleMax as collateral in exchange for a loan. At the hearing, Debtor opposed the Motion and the Court gave the parties an opportunity to file briefs outlining their positions. TitleMax's Motion will be granted for the reasons stated below.

## BACKGROUND

The Court makes the following findings of fact based on the evidence presented at the hearing, the written evidence, and the record:

1. Debtor and TitleMax entered into a 30-day title pawn transaction under the Official Code of Georgia ("O.C.G.A") § 44-12-130 on July 18, 2016. Debtor received a $1,000 loan in exchange for pledging an ownership interest in the Vehicle to TitleMax.

2. The maturity date on the initial agreement was August 17, 2016.

3. On August 17, 2016, Debtor and TitleMax agreed to a 30-day extension of the title pawn agreement, and the maturity date was extended to September 16, 2016.[2]

4. Prior to the current bankruptcy case, Debtor filed a chapter 13 bankruptcy petition, case no. 16-20747 (the "2016 Case"), in this Court[3] on September 15, 2016. (16-20747 ECF No. 1.)[4]

---

[2] The Court notes that Debtor asserts the pawn agreement was renewed for successive periods for several years; however, Debtor did not present any evidence in support of this position.

[3] The 2016 Case was originally assigned to the Honorable John S. Dalis. Following his retirement, it was reassigned on June 26, 2017.

[4] The Court takes judicial notice of Debtor's prior bankruptcy filing and the docket of the 2016 Case. See Cash Inn of Dade, Inc. v. Metro. Dade Cty., 938 F.2d 1239 (11th Cir. 1991) (district court may take judicial notice of public records within its files relating to particular case before it or to other related

2

5. In the 2016 Case, Debtor listed the Vehicle on her schedules (16-20747 ECF No. 1 at 12) and proposed to pay TitleMax through her chapter 13 plan (the "2016 Plan") (16-20747 ECF No. 2). TitleMax took no action to object to such treatment, and the 2016 Plan was confirmed on November 30, 2016. (16-20747 ECF No. 28.)

6. On January 8, 2018, the Court dismissed Debtor's 2016 Case for Debtor's failure to make plan payments. (16-20747 ECF No. 45.)

7. On February 9, 2018, Debtor filed the present bankruptcy case (the "Present Case") and included the Vehicle and TitleMax in her schedules. (ECF No. 1 at 12.)

8. Debtor's chapter 13 plan (ECF No. 2) (the "2018 Plan") listed the value of TitleMax's claim as $1,018.00 and proposed to pay 5% interest on the claim and a monthly payment of $21.81 for the duration of Debtor's 2018 Plan.

9. TitleMax did not object to Debtor's 2018 Plan or to any amendments thereto,[5] and it was confirmed as amended on June 21, 2018. (ECF No. 34.)

10. TitleMax took its first action in the Present Case on July 24, 2018, when it filed the Motion.

11. As of the date of the hearing, Debtor had not redeemed the Vehicle.

---

cases); In re Brown v. IRS (In re Brown), Ch. 13 Case No. 86-10031, Adv. No. 93-01016A, 1995 WL 776920, at *2 n.3 (Bankr. S.D. Ga. Oct. 30, 1995).

[5] The 2018 Plan was amended prior to confirmation; however, none of the proposed amendments impacted the Vehicle or TitleMax. (See ECF Nos. 28, 33.)

3

## CONCLUSIONS OF LAW

I. <u>**Property of the Bankruptcy Estate and the Georgia Pawnbroker Statute**</u>

When a debtor files for bankruptcy, any rights she has in a pawned vehicle, as defined under Georgia law, constitute property of the bankruptcy estate. See 11 U.S.C. § 541. The bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Thus, whatever a debtor's interest in a pawned vehicle is on the petition date, if any, will enter the bankruptcy estate; this also includes any right of redemption a debtor may have in the pawned vehicle. See Charles R. Hall Motors v. Lewis (In re Lewis), 137 F.3d 1280, 1284 (11th Cir. 1998) (concluding a debtor's "statutory right of redemption in the automobile became 'property of the estate' under 11 U.S.C. § 541(a)(1) at the commencement of the case"); Moore v. Complete Cash Holdings, LLC (In re Moore), 448 B.R. 93, 100 (Bankr. N.D. Ga. 2011) (finding that debtors' vehicles became property of the estate when debtors "had possession of the pawned vehicles at the time of the bankruptcy filing and the grace periods for their redemptions had not yet expired"). However, as the Eleventh Circuit recently decided, pawned property and a debtor's right to redeem it can "drop[] out of the bankruptcy estate" by operation of Georgia law where the redemption period expires during the bankruptcy proceeding and a pawnbroker takes action to enforce its rights

4

under the pawn agreement. See Title Max v. Northington (In re Northington), 876 F.3d 1302, 1306 (11th Cir. 2017).

In the Present Case, TitleMax contends that the automatic stay does not apply because the Vehicle is not part of the bankruptcy estate due to Debtor's failure to redeem the Vehicle prior to filing her petition. (ECF No. 42.) In other words, according to TitleMax, Debtor did not own the Vehicle when the Present Case commenced—it belonged to TitleMax. Therefore, even though the 2018 Plan was confirmed, TitleMax asserts that it is not bound by the confirmed 2018 Plan because it includes property that never belonged to the bankruptcy estate or Debtor in the Present Case.

Debtor asserts that at the time she filed the Present Case, she held a possessory interest in the Vehicle, as well as the right to redeem the Vehicle. (ECF No. 43.) Debtor argues that because TitleMax, with proper notice, failed to object to her 2018 Plan,[6] it consented to the Vehicle's treatment under the 2018 Plan. Debtor's argument relies primarily on the fact that the 2018 Plan's confirmation is binding and has preclusive effect. Debtor also asserts that even if the Vehicle's inclusion under the 2018 Plan is illegal, TitleMax is bound by the confirmed 2018 Plan pursuant to the Supreme Court's decision in U.S. Aid Funds, Inc. v. Espinosa, 559 U.S. 260 (2010).

---

[6] Debtor points to the decision in Northington in support of her argument that TitleMax is bound by the confirmed 2018 Plan because it did not take any action to preserve its position prior to confirmation of her 2018 Plan. In re Northington, 876 F.3d at 1308-09.

5

Under Georgia law, a borrower may pledge a vehicle in exchange for a loan by turning over to the pawnbroker the vehicle's certificate of title. O.C.G.A. §§ 44-12-130(3), (5). Once that transfer takes place, the pawnbroker is "conclusively deemed to be [in] possession of the motor vehicle." O.C.G.A. § 44-12-130(5). In the Present Case, TitleMax holds the certificate of title to the Vehicle. O.C.G.A. § 44-12-131(a)(1) provides that all pawn transactions must be for at least 30 days, and upon written agreement between the parties, may be extended for additional 30-day periods. If the pledgor defaults on payments under the pawn agreement, the pawnbroker has the right to repossess the vehicle. O.C.G.A. § 44-12-131(a)(3). From the time of default or the maturity date, Georgia law grants a pledgor of a vehicle a grace period, or redemption period, of 30 days to redeem her vehicle. O.C.G.A. §§ 44-14-403(b)(1), (2). During the redemption period, a pledgor may redeem her vehicle by paying the outstanding principal, interest, and other charges due on the maturity date. O.C.G.A. § 44-14-403(b)(3). If the pledgor fails to timely redeem the vehicle, the vehicle is "automatically forfeited to the pawnbroker by operation of [O.C.G.A. § 44-14-403(b)(3)], and any ownership interest of the pledgor or seller shall automatically be extinguished as regards the pledged item." Id.

If a pledgor files a bankruptcy case and the 30-day redemption period allowed under Georgia law has not expired, then 11 U.S.C. § 108(b) extends the redemption period

6

to 60 days, running from the date the bankruptcy petition is filed.[7] Paul v. S. Ga. Title Pawn (In re Paul), 534 B.R. 430, 432 (Bankr. M.D. Ga. 2015); In re Chastagner, 498 B.R. 376, 380 (Bankr. S.D. Ga. 2013); Moore v. Complete Cash Holdings, LLC (In re Moore), 448 B.R. 93, 101 (Bankr. N.D. Ga. 2011). However, once the applicable redemption period has expired, the debtor's right of redemption cannot be revived through a chapter 13 plan. In re Paul, 534 B.R. at 433. Moreover, a chapter 13 plan cannot be used to extend the redemption period:

> [T]o extend the redemption period by providing for repayment in a Chapter 13 plan would serve to impermissibly re-define state-created property rights by changing a title lender's non-recourse pawn transaction into a recourse loan . . . and by expanding a pawnor's property interest from a time-limited right of redemption to an indefinitely extended right of redemption.

Oglesby v. Title Max (In re Oglesby), No. 01-4072, 2001 WL 34047880, at *4 (Bankr. S.D. Ga. Oct. 23, 2001); see also In re Paul, 534 B.R. at 433.

To determine whether Debtor had any rights in or to the Vehicle that became

---

[7] 11 U.S.C. § 108(b) in pertinent part provides:

> (b) [I]f applicable nonbankruptcy law...or an agreement fixes a period within which the debtor...may file any pleading, demand, notice, or proof of claim or loss, cure a default, or perform any other similar act, and such period has not expired before the date of the filing of the petition, the trustee may only file, cure, or perform, as the case may be, before the later of--
> (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
> (2) 60 days after the order for relief.

11 U.S.C. § 108(b).

7

property of the bankruptcy estate, the Court now considers if the redemption period ended pre-petition or post-petition with respect to the Present Case. At this point a close look at the timing of the 2016 Case, the Present Case, and the expiration of the redemption period is necessary. After an extension, the maturity date of the Debtor's pawn transaction was September 16, 2016. Debtor filed her 2016 Case one day prior to the maturity date. The filing of her 2016 Case resulted in the redemption period on the Vehicle—extended to 60 days from the petition date by operation of 11 U.S.C. § 108(b)—expiring on November 14, 2016. Debtor failed to redeem the Vehicle when the redemption period expired on November 14, 2016, and the Vehicle belonged to TitleMax as of that date. Therefore, Debtor had no interest, possessory or otherwise, in the Vehicle when she filed the Present Case on February 9, 2018. See In re Northington, 876 F.3d at 1315 (concluding that the debtor had no rights in a pawned vehicle, possessory or otherwise, after expiration of the statutory redemption periods). Accordingly, Debtor had no interest in the Vehicle whatsoever that could have become property of the estate in the Present Case.

## II. A Confirmed Plan is Not Binding on a Creditor Where Debtor Includes Property She Does Not Own.

The Court will now address Debtor's contention that because TitleMax took no action to oppose her 2018 Plan as proposed and the 2018 Plan was subsequently confirmed, the 2018 Plan binds TitleMax and Debtor must be permitted to continue making plan

payments to TitleMax. For support, Debtor relies on the proposition that, in the interest finality, even illegal provisions of a confirmed plan are binding.

It is true that the finality of confirmation is a key aspect of 11 U.S.C. § 1327. Such finality, joined principles of res judicata, have empowered courts to conclude that even legally suspect plans will bind parties once confirmed. See U.S. Aid Funds, Inc. v. Espinosa, 559 U.S. 260, 276 (2010) (holding that bankruptcy court's legal error in confirming debtor's plan did not render its judgment void); Universal Am. Mortg. Co. v. Bateman (In re Bateman), 331 F.3d 821, 830 (11th Cir. 2003) (holding confirmed plan binding on creditor that may have had meritorious objection but that failed to object to or timely appeal confirmation).

However, there are limits to the preclusive effect of a confirmed plan that is not perfectly legal. Under 11 U.S.C. § 1322(b)(2), debtors may modify the rights of certain secured creditors in their chapter 13 plan, but debtors "succeed[] to no greater interest in an asset than that held by the debtor at the time the bankruptcy petition was filed." Dunlap v. Cash Am. Pawn of Nashville (In re Dunlap), 158 B.R. 724, 727 (M.D. Tenn. 1993). Importantly, debtors may not "restructure the claims of a pawnbroker after the expiration of the redemption period." USA Title Pawn v. Askew (In re Howard), 507 B.R. 394, 399 (Bankr. N.D. Ga. 2014) (citing In re Dunlap, 158 B.R. at 727). Where the redemption period on a pawned vehicle expires *prior to the petition date*, the pawned vehicle does not become

9

part of the debtor's bankruptcy estate, the Court has no jurisdiction over it, and the plan cannot include it. In re Howard, 507 B.R. at 398-99; see also Barnette v. Bankers Fin. Servs. (In re Barnette), Ch. 13 Case No. 07-12986, Adv. No. 07-1068, 2008 WL 7842071, at *2 (Bankr. N.D. Ga. 2008) (holding if the redemption period on a pawned vehicle expires prior to the filing of debtor's bankruptcy petition, the debtor's ownership interest has been forfeited and does not become part of the bankruptcy estate); Bell v. Instant Car Title Loans (In re Bell), 279 B.R. 890, 896-97 (Bankr. N.D. Ga. 2002) (same).

Unfortunately for Debtor, the 2018 Plan attempted to created estate property that simply did not exist on the petition date of the Present Case. Debtor's confirmed 2018 Plan's treatment of the Vehicle as property of the Debtor is immaterial. The redemption period on the subject title pawn expired pre-petition. The Vehicle was not property of the bankruptcy estate in the Present Case because Debtor's ownership interest in the Vehicle was automatically extinguished pre-petition by operation of O.C.G.A. § 44-14-403(b)(3) when the Vehicle became the property of TitleMax.

### III. The Eleventh Circuit's *Northington* Decision is Distinguishable from These Facts.

The parties extensively discussed the Eleventh Circuit's Northington decision in their briefs. See In re Northington, 876 F.3d 1302. However, Northington is distinguishable from the facts before the Court. In Northington, the redemption period

10

for the pawned vehicle was still ticking when the debtor filed for bankruptcy. Id. at 1309-10. Therefore, the right to redeem the pawned vehicle became part of the bankruptcy estate at the time of filing. Id. The redemption period was extended to 60 days from the date the debtor filed his petition by operation of 11 U.S.C. § 108(b), and upon the expiration of those 60 days without redemption by the debtor, the pawned vehicle dropped out of the bankruptcy estate. Id. at 1315. At that point, by operation of Georgia law, "TitleMax didn't have a mere 'claim'—it had...a 2006 Dodge Charger." Id. In that case, despite the confirmed chapter 13 plan, TitleMax was still permitted to pursue its motion for relief as to the pawned vehicle, because the Eleventh Circuit took the motion for relief, filed prior to confirmation, as "some action" adequate to preserve its position that the vehicle dropped out of the estate upon the expiration of the redemption period. Id. at 1308-09.

Debtor argues that the Northington decision requires TitleMax to have "take[n] some action" pre-confirmation to preserve its rights, and because it did not put Debtor on notice that it objected to its treatment under the 2018 Plan, it is bound by the confirmed 2018 Plan. This is incorrect. The debtor in Northington filed bankruptcy still with a right to redeem his vehicle, which became part of his bankruptcy estate. Debtor here did not. This fact stops any further analysis in its tracks. The Vehicle belonged to TitleMax when Debtor filed for bankruptcy. As such, TitleMax was not required to take any action in the Present Case to preserve its rights in a Vehicle it wholly owned at the start of the case.

11

## CONCLUSION

Based on the foregoing, it is **THEREFORE ORDERED** that the Motion is **GRANTED** and TitleMax may pursue its state law remedies as to the Vehicle.

_____
Michele J. Kim
United States Bankruptcy Judge

Dated at Brunswick, Georgia,
this 29th day of March, 2019.